Edward T. McCaffrey, J.
This is a consolidated motion to obtain the relief as sought by the petitioner and for leave to intervene as sought by the petitioner Local 1814 International Longshoremen’s Association and it is submitted after denial of a cross motion to dismiss the main petition for legal insufficiency.
This article 78 proceeding was initiated by the petitioner for judgment annulling the determination of the Medical Appeals Unit of the Bureau of Workmen’s Compensation which approved the denial of a compensation medical bureau license to the petitioner. Such denial was on the ground that petitioner is ‘ ‘ not eligible for licensing since it is intended to diagnose and treat members of a union.” The qualifications of the staff of petitioner’s medical center and its facilities are not in issue.
Application for license is made to the medical society in the area involved. Its compensation committee investigates and determines whether the qualifications exist and makes recommendation of approval or disapproval. The Medical Appeals Unit of the Bureau of Workmen’s Compensation determines whether the recommendation of the society is proper.
*621 In this instance the petitioner’s application was mistakenly filed with the Medical Registration Section of the Bureau of Workmen’s Compensation on October 20,1965 whereas it should have been filed with the medical society. The Registration Section forwarded the application to the society sometime after its receipt. The society waived procedural defect as petitioner alleges, made investigation pursuant to rule 3 of the Rules of County Medical Societies and conceded the excellence of the center’s qualifications as to staff and facilities. However, the application was not approved as indicated and notice of such disapproval was not given until March 29, 1966 as petitioner alleges, contrary to rule 3 which requires that determination be made by the society within 60 days. In addition, the society did not give notice in writing to the petitioner but forwarded its disapproval to the Medical Registration Section which gave the March 29, 1966 notice. Appeal was perfected and a hearing was held on July 20, 1966 during which as petitioner alleges qualifications were admitted and it was stated at such hearing that “ a question of the sections and the interpretation of the law” was the sole issue. On December 7, 1966 the Medical Appeals Unit upheld the denial of application.
Petitioner contends in respect of this procedure that the determination is rendered null and void because there was violation with respect to the time limitation for action and decision. Apart from the fact that there was violation by the petitioner of the method provided for initiation of a license application, the time element as provided is directory and not mandatory and failure of strict compliance cannot as a matter of fact or of law constitute ground for nullification of the determination and mandated issuance of license.
Petitioner’s medical center employs 54 physicians headed by a medical director who is advised and assisted by a council of 10 physicians and dentists. It is alleged that during the period of a calendar year, 525 patients are served per day on an average and the yearly total is over 16,500. The center hires 182 salaried employees of which doctors, dentists, nurses and technicians account for 129. The center is situated at a point central to the operation of all participating employers.
Petitioner urges the determination under review is arbitrary and capricious, respondents having delegated to themselves legislative powers not granted by statute; that discretion was not exercised within the statutory and regulatory framework as provided; that it has the constitutional and legislative right to treat its beneficiaries ’ industrial illnesses and injuries; that *622 such power was conferred upon it by the Legislature in its statute of incorporation; and, finally, petitioner urges it was deprived of due process in that there was an improper and ultra vires application of the pertinent statutes and rules.
The provisions of the Workmen’s Compensation Law and of the rules and procedure relative to medical and surgical care and treatment are promulgated pursuant to section 18 of article I of the New York State Constitution which provides in part: “ Nothing contained in this constitution shall be construed to limit the power of the legislature to enact laws for the protection of the lives, health, or safety of employees; or for the payment, either by employers, or by employers and employees or otherwise, either directly or through a state or other system of insurance or otherwise, of compensation for injuries to employees or for death of employees resulting from such injuries without regard to fault as a cause thereof ”. Workmen’s Compensation Law provides: “§ 13-a. Selection of authorized physician by employee. (1) An injured employee' may, when care is required, select to treat him any physician authorized by the chairman to render medical care, as hereinafter provided. ’ ’ However, such treatment is to be rendered only by a physician authorized by the Chairman of the Workmen’s Compensation Board provided that: “Emergency (first aid) medical care may be rendered under this chapter by any physician licensed to practice medicine in the state of New York without authorization of the chairman under this section ”. (§ 13-b, subd. 1, par. [a].) With respect to medical bureaus, license may be issued upon approval of the appropriate medical society (§ 13-c) but “ The chairman, however, shall not authorize or license more than two such bureaus operated by the same physician.” By subdivision (2) of section 13-j it is provided: “An employer may maintain a compensation medical bureau at the place or places of employment, if such bureau is required because of the nature of the industrial hazards, or the frequency of injuries to employees arising out of industry. Such bureau or bureaus shall be authorized and licensed pursuant to section thirteen-c, and their use by an injured employee shall be optional in accordance with the provisions of section thirteen-a.” (Emphasis supplied.)
Under the rules (12 NYCRR 325-1.15) an employer may operate, without license a first aid station for emergency treatment but 1 £ no subsequent treatments are to be rendered by any one, other than a qualified physician on the minimum fee schedule basis.” Of course, this petitioner is not an employer or a qualified physician, but a licensed bureau qualifies for the fur *623 nishing of subsequent treatments (12 NY CEB 325-3.1— 325-3.7). However, the rules (12 NYCEB 325-3.6) provide: “No license shall be issued to an employer to cover any but his own employees ’ ’ with exceptions not here applicable.
Petitioner corporation was created and organized pursuant to chapter 988 of the Laws of 1957 as a nonprofit corporation to operate a health center. That chapter was amended by chapter 853 of the Laws of 1963 which provides: “ § 2. The objects and purposes of the corporation shall be: to establish and maintain a health center where the following may be provided: medical, surgical, and dental services through duly licensed physicians and duly licensed dentists, as well as optical services through duly licensed optometrists or duly licensed physicians, all on cm out-patient basis. The corporation shall furnish such services only to employees, and former employees receiving retirement benefits from the New York Shipping Association-International Longshoremen’s Association Pension Trust Fund, including dependents of employees, and dependents of such former employees, covered by collective bargaining agreements between the International Longshoremen’s Association (a labor organization), and the New York Shipping Association, Inc. (a membership corporation), organized and existing by virtue of the laws of the state of New York, composed of owners and operators of ocean going vessels engaged in the transportation of passengers and/or freight for hire, and the owners and/or operators of water terminal facilities in the port of New York, and to employees covered by collective bargaining agreements between said labor organization and various other employers or associations of employers, gratuitously.” (Italics added.) In addition to the fact that petitioner employs 182 persons of whom 129 are directly involved in administration of medical and dental treatment and care, NYSA represents approximately 132 employers of water front laborers and is their bargaining agent while ILA is the bargaining representative of those employees. Of the 20,000 laborers thus involved, 50% it is alleged work in the vicinity of and use petitioner’s Health Center. They may make use of the first aid and emergency treatment available at the center. It desires by its license application to expand its operation to in-patient treatment despite the fact petitioner is not an employer and those it seeks thus to treat are not per se employees but rather they are members of the union irrespective of the person by whom employed and the place where they are employed. The law affords to such laborers free first aid and emergency treatment which their employers are bound to supply. (Szold v. Outlet *624 Embroidery Supply Co., 274 N. Y. 271.) In this context the purported freedom of choice is not altogether manifest, yet petitioner insists that collective bargaining arrangements require that water front laborers must be afforded their freedom of choice in selection of physicans administering post first aid and emergency treatment and care. It would seem thereby that any freedom of choice is further attenuated. The argument that the determination under review denies freedom of choice must be rejected since it is afforded by the availability of first aid and emergency treatment and further by available continuing" care and treatment pursuant to appropriate licensing procedures through a center created and organized and operated by an employer, corporate or otherwise, for the benefit of its employees. Not only freedom of choice but due process and equal protection of the laws are thus afforded. There is no unlawful assumption of legislative authority by promulgation of rules requiring the operation of a bureau only by an employer for its employees and prohibiting operation of more than one bureau by the same physician. Petitioner seeks to evade the clear requirement of the law and of the rules by seeking the licensing of a bureau for post first aid and emergency treatment and for medical or surgical treatment which is operated not on behalf of an employer but on behalf of many employers or on behalf of the members of a union who work with those employers operating within the subject area.
There remains the application for leave to intervene. That petitioner was not a party to the original application or appeal, could not have been a party thereto as of right, had not sought and was not invited to participate. It has not a standing to intervene as a party here. Whatever interest the local union and its members may have in the matter is not sufficient in the circumstances here as a matter of fact or of law to warrant intervention. Indeed, it is not a matter of standing with which we are concerned. The center had made application for license and as such it was a party to the adversary proceeding before the Medical Appeals Unit whose determination is under review. The question therefore is whether the center, the applicant for a bureau license, was a proper applicant as a matter of law. The center was the party to that proceeding although it was mistaken in its position. Its position has been well presented here. For these reasons intervention is improper and unnecessary. The motions are denied.